IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRIAN W.,[1] ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, Acting ) <br> Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | No. 22 C 4802 <br><br> Magistrate Judge <br> Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Brian W.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No.14] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 17] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by his first name and the first initial of his last name.

## BACKGROUND

### I. PROCEDURAL HISTORY

On September 2, 2015, Plaintiff filed a claim for DIB, alleging disability since March 31, 2015. Plaintiff's claim was denied throughout the administrative stages, after which he timely appealed to this Court. On January 29, 2021, the Court remanded the matter for further proceedings. A telephonic remand hearing was held on September 16, 2021, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A medical expert ("ME") and a vocational expert ("VE") also testified.

On November 3, 2021, the ALJ again denied Plaintiff's claim for benefits, finding him not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's November 3, 2021 decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

In the ALJ's November 3, 2021 decision, Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had engaged in substantial gainful activities for the period of January 1, 2019 to the second quarter of 2020. However, the ALJ further determined that there had been a continuous 12-month period during which Plaintiff did not engage in

substantial gainful activity. At step two, the ALJ concluded that Plaintiff had the following severe impairments: panhypopituitarism; Meniere's disease with bilateral hearing loss treated with hearing aids; status post ventriculoperitoneal shunt placed for hydrocephalus; arachnoid cyst; degenerative disc disease of the cervical spine; lumbar spondylosis, status post laminectomy and fusion; mild neurocognitive disorder; and mild anxiety. The ALJ concluded at step three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

    Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the following additional limitations: can never climb ladders, ropes, or scaffolds; can occasionally climb ramps/stairs, balance, and stoop; should avoid hazards of unprotected heights, moving and dangerous machinery, and driving tasks; is unlimited in noise level if not needing to engage in oral communication with others, but if he needs to be alert to hazards or alerts or engage in oral communication with others, then he is limited to a moderate or quieter noise level and communication should allow for hearing aids as worn by him; work must allow for phone communication to have amplification in volume and for instruction or communication with co-workers or supervisors, if not over the phone, should be face to face and in person for instruction or communication with co-workers; communication with the general public or customers for work tasks should be on an occasional basis involving only brief and superficial interactions; and can learn, understand, remember, and carry

out simple work instructions, involving routine work tasks that do not require complex memory functioning. At step four, the ALJ concluded that Plaintiff would be unable to perform his past relevant work as a financial advisor, financial educator, personal banker, or substitute teacher. However, at step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that he is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

4

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019)

(citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ erred in weighing the medical opinion evidence; and (2) the ALJ erred in evaluating Plaintiff's subjective symptoms. Each argument will be addressed below in turn.

### A. <u>The ALJ's Assessment of the Medical Opinions</u>

In advancing his first argument, Plaintiff contends that the ALJ erred "in relying on the opinions of a non-examining medical consultant [Dr. Michael Rabin] over the opinions of Plaintiff's treating source [Dr. Marcello Cherchi] without proving adequate rationale." (Pl.'s Br. at 1.) Along those lines, with respect to Dr. Cherchi, Plaintiff's treating neurologist, Plaintiff asserts that the ALJ improperly discounted his opinions. In her decision, the ALJ noted Dr. Cherchi's opinions, including his opinions that Plaintiff was precluded from performing even basic work activities and would require unscheduled breaks on account of his dizzy spells. In discounting Dr. Cherchi's opinions, the ALJ reasoned that the "opinions are not well-supported by clinical and laboratory diagnostic techniques and [are] not

7

consistent with the other substantial evidence of record including substantial medical records since 2016." (R. 1457.) The ALJ further reasoned that the records "fail to document complaints of frequent vertigo or dizziness making the connection of work stress leading to anxiety as the cause of these attacks much less strong" and "the physical examination during the January 2016 appointment showed absolutely no overt limitations." (*Id.*) Additionally, the ALJ reasoned that "[t]he doctor's statements that the claimant would be precluded from work activity secondary to Meniere's flares lacks significant support from the totality of the evidence and Dr. Cherchi's own treatment records." (*Id.*)

Under the "treating physician rule,"[2] an ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c); *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *see also Adrian Z. v. Berryhill*, No. 17-cv-4585, 2019 U.S. Dist. LEXIS 129383, at *4 (N.D. Ill. Aug. 2, 2019) ("When an ALJ declines to give controlling weight to a treating physician's opinion, he must provide a sound explanation for the rejection.")

---

[2] The Social Security Administration has modified the treating-physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) ..., including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Plaintiff's application in this case was filed on September 2, 2015, and, therefore, the ALJ was required to apply the former treating physician rule.

8

(citation omitted). Even if a treater's opinion is not given controlling weight, an ALJ must still determine what value the assessment does merit. *Scott*, 647 F.3d at 740; *Campbell*, 627 F.3d at 308.

Here, the Court finds that the ALJ offered the requisite sound explanation for discounting Dr. Cherchi's opinions, per her explicit reasoning that the opinions were not supported by clinical and diagnostic techniques and were not consistent with subsequent medical records, physical examination findings, and Dr. Cherchi's own treatment records. Along those lines, the Court concludes that substantial evidence supports the ALJ's decision not to give Dr. Cherchi's opinions controlling weight. *See Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician, . . . or when the treating physician's opinion is internally inconsistent, . . . as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'") (citations omitted).

Plaintiff also takes issue with the fact that the ALJ gave significant weight to the opinions of Dr. Rabin, the testifying ME in this case. In her decision, the ALJ noted Dr. Rabin's testimony that Plaintiff's "cognitive disorder . . . was mostly one discrete issue dealing with delayed verbal memory." (R. 1460.) The ALJ then summarized Dr. Rabin's opinions as follows:

> Dr. Rabin opined that the claimant could perform simple and routine work that does not require complex memory functioning as the claimant is very bright with above average intelligence and he suggested that most jobs would be no problem, but if a job required delayed verbal memory, then this would be an issue. He stated further that the claimant can learn and remember simple tasks but he would have

9

> difficulty remembering a complicated task over time. He reiterated that a simple task done daily would be okay. Dr. Rabin added that the claimant should have occasional contact with the public because he gets frustrated if he cannot remember something and should not be the primary person dealing with customers, but is not limited with supervisors or coworkers.

(*Id.* at 1461.) In finding Dr. Rabin's opinions persuasive, the ALJ reasoned as follows:

> The undersigned gives the testimony, analysis, and opinion of Dr. Rabin great weight because he had the opportunity to listen to approximately 30 minutes of the claimant's testimony (including testimony related to his past work history), review the entirety of the longitudinal record, testify from a completely neutral and independent position, and render an opinion well within his psychological expertise that is consistent with and supported by the medical evidence. As described above and during the hearing, Dr. Rabin's testimony was thorough and well-explained. Moreover, Dr. Rabin's testimony and opinion is well-supported by clinical and diagnostic evidence and he is aware of the disability program's requirements, which renders his opinion more persuasive.

(*Id.* at 1462.)

The Court finds no error in the ALJ's consideration of Dr. Rabin's testimony and opinions. Plaintiff complains that "Dr. Rabin reviewed only a portion of the record." (Pl.'s Br. at 9.) According to Plaintiff, that is a problem because "[s]ubsequent records consistently show Plaintiff continued to have difficulty with his memory and episodes of dizziness, among other impairments." (*Id.*) As an initial matter, it is noteworthy that Plaintiff's counsel did not raise an objection that Dr. Rabin needed to see additional records to inform his testimony. Defendant is correct that "Plaintiff's attorney could have questioned Dr. Rabin about the other records, and he likewise could have alerted the ALJ to any evidence he believed Dr. Rabin needed to see before offering an opinion, but he chose not to do [so] either." (Def.'s

10

Memo. at 10.) Furthermore, and in any event, the Court concludes that Plaintiff's argument ultimately fails because he has not sufficiently explained how any subsequent medical records concerning dizziness and memory issues would change Dr. Rabin's core opinion – that Plaintiff was capable of performing simple and routine work that does not require complex memory functioning.

As part of his first argument, Plaintiff also asserts that the ALJ improperly "played doctor" and "erred in relying on her own lay opinion regarding Plaintiff's physical impairments without providing a proper evidentiary basis." (Pl.'s Br. at 1.) The Court rejects that argument. The ALJ was not erroneously "playing doctor" by considering and weighing the evidence in relation to the various medical opinions. *See Armstrong v. Barnhart*, 287 F. Supp. 2d 881, 886-87 (N.D. Ill. 2003) ("Our review of the record indicates that the ALJ was not 'playing doctor,' but performing his duty to consider and weigh the evidence."). Indeed, "comparing and weighing the different [medical] opinions differently based on whether they were supported by the medical record as a whole . . . is exactly what the ALJ is supposed to do." *Roy R. v. Kijakazi*, No. 10 CV 1687, 2022 WL 1185601, at *13 (N.D. Ill. Apr. 21, 2022) (citations omitted). That is what the ALJ did here. As for the ALJ's physical RFC assessment in particular, as Defendant points out, "the ALJ did not reject opinions that were more restrictive than the residual functional capacity: the ALJ found the reviewing physicians' opinions worth little weight because they were not restrictive *enough*." (Def.'s Memo. at 14.) Plaintiff's attacks on the ALJ's physical RFC assessment are undermined by the fact that no doctor opined that Plaintiff was

11

more limited with respect to climbing and balancing than the ALJ found. *See Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018).

Plaintiff also argues that the ALJ did not sufficiently assess his alleged dizzy spells. The Court must reject that argument too. In her decision, the ALJ provided an in-depth analysis of Plaintiff's alleged dizzy spells and vertigo. (R. 1451-52.) The ALJ noted that Plaintiff "reported 'rare dizziness' or intermittent dizziness to the endocrinologist on January 31, 2017, stating . . . 'overall he feels well.'" (*Id.* at 1451.) The ALJ further noted that Plaintiff "reported in January 2019 that he had no vertigo since his shunt revision" and "[s]ubsequent notes continued to indicate that the claimant denied dizziness throughout 2019." (*Id.*) Additionally, the ALJ noted that in 2021 Plaintiff "reported a past history of dizziness with activity but stated it was 'under control' and he denied dizziness or lightheadedness." (*Id.*) The Court finds that the ALJ's analysis of Plaintiff's issues with dizzy spells was sufficiently fulsome. Moreover, as Defendant points out, the ALJ in fact accounted for plaintiff's alleged dizziness/vertigo by precluding any driving, exposure to hazards, climbing of ladders, ropes, or scaffolds, and by restricting him to only occasional balancing, stooping, and climbing of ramps or stairs.

Finally, Plaintiff contends that the ALJ improperly relied on Plaintiff's improvement in relation to his physical impairments. Pertinent to that argument, the ALJ noted that "[t]he records show that the claimant's symptoms improved significantly, with more energy, less fatigue, and good resolution of the previously acute symptoms." (R. 1450-51.) The ALJ also reasoned that "[t]he voluminous

12

evidence of record documents that the claimant's treatment and surgeries have generally improved his functioning and symptoms." (*Id.* at 1456.) Plaintiff's argument is unavailing because it was appropriate for the ALJ to consider Plaintiff's improvement in reaching her overall determinations. *See Conor B. v. Kijakazi*, No. 20 CV 3342, 2022 WL 4079461, at *10 (N.D. Ill. Sept. 6, 2022) ("So too was it proper for the ALJ to consider the course and effectiveness of Claimant's treatment, as well as Claimant's reported improvement over time with the assistance of medication, work history, and writing of a book.") (citation omitted); *Dante B. v. Kijakazi*, No. 20-CV-1104, 2022 WL 3926050, at *9 (N.D. Ill. Aug. 31, 2022) ("[I]mprovement *is* a relevant factor that ALJs may consider.").

### B. The ALJ's Subjective Symptom Evaluation

For his second argument, Plaintiff contends that the ALJ improperly "discounted the veracity of Plaintiff's allegations regarding his subjective symptoms based on his daily activities and perceived improvement." (Pl.'s Br. at 1.) In her decision, the ALJ considered Plaintiff's alleged subjective symptoms but ultimately determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 1450.) In assessing Plaintiff's symptoms, the ALJ stated as follows with respect to Plaintiff's activities of daily living:

> [T]he claimant was able to perform Sudoku puzzles and crossword puzzles, drive, and manage finances in addition to caring for his now two young children, managing his own health conditions despite a number of surgeries . . . as well as maintaining a regular workout regimen of

13

> cardiovascular activities as well as weight lifting exercises. . . . The evidence of record shows that the claimant, despite his numerous conditions and acute symptoms occurring at times since the alleged onset date, the claimant has worked as a substitute teacher, continued his stock trading hobby for his personal investment portfolio, continued to perform child care and household chores, navigated throughout the community by driving himself even though he alleged debilitating vertigo spells, and other activities including but not limited to his workout regimen. The claimant's wide range of daily activities and demands as well as the frequent report of stable or controlled symptoms with appropriate treatment, medication regimen, and other treatment interventions (i.e. placement of a new shunt) fails to support the claimant's allegations of inability to perform work.

(*Id.* at 1455-56.)

This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). With respect to daily activities, an ALJ should "explain how Plaintiff's ability to perform his daily activities undermined his allegations of disability." *Steven L. v. Saul*, No. 19-CV-6047, 2021 WL 1531603, at *2 (N.D. Ill. Apr. 19, 2021). Under these legal standards, the Court finds that the ALJ reasonably determined that Plaintiff's allegations were not fully corroborated based, in part, on Plaintiff's wide-ranging daily activities. *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several

14

reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). In assessing Plaintiff's daily activities, the ALJ did not improperly equate those activities with an ability to work full time. Rather, the ALJ appropriately read into Plaintiff's extensive activities that he was not as restricted as alleged.

Plaintiff also again takes issue with the ALJ's consideration of Plaintiff's substantial medical improvement. As the Court has found above, it was appropriate for the ALJ to consider Plaintiff's improvement, including with respect to the ALJ's credibility determination. *See Conor B.*, 2022 WL 4079461 at *10; *Dante B.*, 2022 WL 3926050 at *9. Contrary to Plaintiff's assertion, the ALJ did not find it "dispositive that Plaintiff improved with treatment." (Pl.'s Br. at 13.) Rather, the ALJ appropriately considered the improvement Plaintiff had experienced in finding Plaintiff not as limited as alleged. Accordingly, Plaintiff's attack on the ALJ's symptom evaluation must fail.[3]

---

[3] Plaintiff also contends that the ALJ did not sufficiently consider the reasons Plaintiff did not seek treatment for certain of his conditions. Pertinent to that argument, the ALJ noted that Plaintiff "did endorse that his vertigo/Meriere's attacks were precipitated by anxiety and stress, which the claimant's neurologist, Dr. Cherchi, stated was abnormal but referred the claimant to a psychiatric evaluation, but . . . this was not followed up on by the claimant." (R. 1447.) The Court finds that the ALJ did not err in considering the fact that Plaintiff did not follow up with medical care that could have addressed his alleged dizzy spells.

15

## **CONCLUSION**

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary judgment [Doc. No.14] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 17] is granted.

**SO ORDERED.**                                    **ENTERED:**

**DATE:     May 18, 2023**                         _____
                                                   **HON. MARIA VALDEZ**
                                                   **United States Magistrate Judge**